Appellant. Mr. Klepper for the Appellant, Mr. Khrushchev for the Appellant, and Mr. Falvo for the Appellant. May it please the Court, Stephen Klepper, I'm here to present on question one of the brief. Alex Khrushchev will be handling question two. On question one, I'd like to begin with two key factual holdings. The first was that this was not intentional, it was not willful, the discovery failed. The government has reiterated its argument that it was willful, mostly in a footnote, but that was the holding below. It was not intentional, not willful. The second point... I mean, it probably makes no difference, but the judge just sort of assumed that. It probably amounts to the same thing. Yes. It's not really an affirmative finding. Your Honor, yes, I would say that, but there are two things about that. First, even under the government's standards, it would advocate, it would need to be an affirmative finding of willful or intentional misconduct. And the second is that the judge did make clear at various times that he was familiar with Heather Shaner and was comfortable taking her at her word based on what he had heard would have happened. The other item is that Judge Roberts gave the government two opportunities to make a prejudice and said this on Thursday when it had come out, take the weekend, we'll figure out how to prejudice you. He said, I'm hearing it, it's not sounding like prejudice to me. We'll see on Monday. And on Monday, the government makes an argument for prejudice. Judge Roberts keeps saying that doesn't make sense. And the government finally conceded that it was an intellectual objection that they had. It just felt wrong that Mr. Graper should be rewarded. So no prejudice. And they do not claim prejudice in their brief in this case. The issue here is that Judge Roberts applied the wrong standard to the factual findings he made, which on abuse of discretion review is precisely what this court is able to review de novo. And it is absolutely clear that Judge Roberts applied the wrong standard. He said that I have no discretion to admit this unless there is a threshold showing of good cause. That's what Judge Roberts said over and over. And that would be the standard on rule 12.1 regarding alibi testimony. Did he say that there had to be good cause or that good cause could excuse it? He said you are not showing me good cause. Right. So I read that as saying I'm going to exclude this, but if you show me good cause, I'll let it in sort of as an extra defense. That is not how I read the record, Your Honor. That's how the government's reading it. It's not the government's reading. No, I think it is the government's reading. I thought that was the government's reading as well. Well, let me say this. From page 1076 to page 1085 of the joint appendix, over and over, the judge says that what he's looking for is good cause. And that is the standard if you look at rule 12.2, for instance, which is a late designation of an expert on mental state. And in fact, in the United States v. Day case that the government relies on to say, oh, well, maybe this tempers the Mitchell standard, something like that. Well, no. U.S. v. Day, even though it talked about rule 16, was actually a rule 12.2 case. That was a rule 12.2 disclosure that had not been timely made. And the case I relied on was actually Judge Williams' decision in U.S. v. Johnson, which was expressly a rule 12.2 case. The controlling earlier and on-point decision is U.S. v. Mitchell. And in that case, it was the government that had missed the deadline to designate, and the government advocated a least restrictive sanction measure. And this court granted that standard. That was the standard the government wanted. And in that case, there was a mid-week, it was, I believe, it was- Why do you think that United States v. Johnson isn't controlling? United States v. Johnson is purely a 12.2 case. Is there any 12.1? But is there any difference? I mean, any reason why that would be different? I mean, there's nothing about the word. I mean, nothing in any of these rules uses the words least restrictive. It's just something that the court has added on, right? Well, there is a material difference between the 12.1 through 12.3 series in Rule 16. Because under those rules, there needs to be a threshold showing of good cause before a judge can decide whether he may admit the evidence late designated. That is the rule. That is what the rule says. Rule 16 says nothing of the sort. Rule 16c is what governs, and it just gives the judge wide discretion right off the bat. There's no good cause threshold showing required. And in that case, you look at the facts, U.S. v. Mitchell. The government said, well, there was a mid-trial continuance for all intents and purposes because this came up right before a long weekend. And there was a whole weekend for the defense to decide how this fit into his case. And you look at what happened here, the same portion, 1076 to 80- Help me understand. Why doesn't Rule 16 cut against you then with this sort of discretion given? Because Rule 16 talks widely of discretion. The judge has discretion off the bat. There's not a rigid good cause standard that appears in, for instance, 12.2. That is why. And so this court came up with the least restrictive sanction test to guide that discretion. That is written into the rule in this circuit. And so- That's how you read Day, I thought. That's how I read Mitchell. That's how you read Mitchell. That's how I read Mitchell. How do you read Day? No, Marshall. Marshall. I'm sorry, is it Marshall? I'm sorry. How do you read Day then? Isn't there a tension between Day and Marshall? There is a tension. Now, if there is a conflict, Marshall controls. Yeah, but let's just talk about tension here. What's the tension? U.S. versus Day. The tension is that it talked in Rule 16 terms. It cited Rule 16 when it said, we have never adopted a least restrictive sanction standard. The parties didn't cite Marshall. They didn't mention it. And in fact, when you look at the facts that Day said- Day doesn't mention Marshall either, does it? It doesn't. No, I'm saying the parties, the decision, didn't mention Marshall. But Marshall doesn't. Does Marshall mention Johnson? It does not because Johnson didn't even cite Rule 16. Johnson was a 12-point- Isn't it a better reading that perhaps Marshall's an outlier here? No, Your Honor. The government has cited Marshall in its brief. This is the law of the circle. With all due respect to the government, that doesn't resolve the issue, does it? What I will say is that as we point out, this is actually Horn Book Law. I mean, as we state in our- Marshall is or Day is? Marshall. That is Horn Book Law out of the, let's see, I'll find that really quick for you. The citation is on page 19 of our opening brief. It's the 9A Federal Procedure, Legal Edition 221178. Points this out, that this is the rule nationwide. So it is not an outlier, it's the law of the circuit, it's the law of the country. So- Then is Day wrong? Day is wrong to the extent that it set talks in Rule 16 terms. Because it is actually a 12.2 case where good cause first needs to be shown. And the court could- Why would we distinguish between Rule 12 and Rule 16 for this purpose? Rule 12.1 through 12.3 are all issues like alibi, mental state, government privilege that the government needs to go out and do discovery to try to rebut. There is no way to find a rebuttal expert over a weekend during trial. That's why that's the rule. This is a document, two documents that were undisputedly genuine. That is the distinction. Now, I do not appear to have any time left to address the question of harmless error. So I will- No, no, no, no, no, we have to talk about that. I'm not getting off that easily, am I? It's not a question of easily, maybe it'll be helpful to you. Yes. Here's my harmless error questions. On the first, on the 2009 contract, and that excluded document. Yes. So, according to the verdict form. Yes. He is found guilty with respect to that, I'm trying to find it here, count eight. Yes. On quite a number of false charges, right? Yes. Okay, and most of them, or many of them anyway, are before the July 2009 agreement, right? A few of them are. Actually, I think most of them were after. Well, I count 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17. Oh, I'm sorry, you're right. 21. You're right. More than a few. There's quite a few before and some after. But let me- And some after, so none of those could have been justified by that agreement, correct? Well, some of them could have been justified in part because it was about the raise. This is a case where false calculation matters. Let me just hold that one second. One second. Oh, I'm sorry, the ones that came before. The ones that came before could not have been. They could not have been. And there's at least 23 of them that the jury agreed that they were items of embezzlement from a labor organization, correct? It was, the influence was on the mental state, not on the actual calculation, if I may explain. On the government's theory of the case, the government said, what Mr. Gray-Burrs does is show you a piece of the puzzle. This is how you understand the case as a whole. He will talk to you about a document, and then he won't show it to you. I understand your argument about carryover or infecting everything. I'm not- Yeah. That's a second-level argument. I've got to get to the first-level argument. On the first-level, your Honor, I do concede- Would this have been a complete defense to count eight? The answer is no, correct? That is correct, Your Honor. Okay. So now your argument is that it so infected the other counts that it makes that entire count invalid. Is that right? Yes. Not just that count, but going- So that even if it were in evidence, could have affected embezzlements in 2008. Your Honor- You haven't presented any- There's nothing in the brief at all to suggest any argument as to why these events from 2007 and 2008 were not embezzlement. Your Honor, allow me to explain. I think this is a case where, first of all, the burden does matter. And the government has the burden of proving harmless error. And what impedes the government's ability to show harmless error is its closing argument. In every harmless error case that comes, or most cases that come through, they say, where did this fit into the government's case? And we look to closing argument. And the government said, we are going to show you a scheme that was beginning from 2007 and carried on through, actually earlier, and goes on, well, 2007 to 2011. And what happens here is, you need to understand that Khalid Freiburg is a liar. He, during this entire time, the entire time, he was using the union fund as a personal piggy bank. And we, who he is, who he is, is somebody who shows you only a piece of the puzzle. We'll talk about a document, but then won't show it to you. And if there are- I understand, since we're out of time. I got that argument. That's well stated in the brief. Now, assuming that, just for the moment, that it is not harmless with respect to the conviction on count eight, what about the sentence on count eight? Yes, Your Honor. Well, what I would say is that, first of all, this is a case where as soon as you start going down, dollars really start counting. This is not a- So he got a 12-point bump. Yes. For more than $200,000, right? Yes. And the total was $252,000. So you have to get down $52,000. Well, what I would say, Your Honor, is that count 12 is a lot of money. All right, we're not on count 12. But count eight doesn't alone get you down. Okay, gotcha. So now let's talk about, what about on forfeiture? Does it get you something on forfeiture? It does. It does. Everyone agreed to use the loss amount as forfeiture. And on restitution. And on restitution, and that matters to my client. I understand. All right, now on count 12. Yes. This is the Frazier matter, right? Yes. Okay, so on that one, I'm having a little difficulty, again, on the harmlessness of whether it's harmless or not. There was significant testimony that there was an agreement, and that it was a valid agreement. And I don't really see the government challenging that it was a valid agreement. To the contrary, in the closing arguments, they say there was an agreement with respect to the $45. So what's the harm on that one? So they don't get the written contract in. Yeah. But they do get the testimony from several people that there was a contract. And they get the government's acknowledgment in closing argument that there was a $45 an hour contract. All right, well, Your Honor, if you compare and contrast count eight. Count eight took out for the amount that was there, the amount that was allegedly overpaid. The amount that was allegedly overpaid that Mr. Gregory Burris was allegedly not entitled to. On count 12, the government listed every single Gabby Frazier paycheck in full as being wholly fraudulent. And that's what the jury found, consistent with how this verdict sheet worked. And under that agreement, the witnesses couldn't remember the exact terms. And we were not- They remembered $45 an hour with respect to the Gabby Frazier argument. For a minimum of 20 hours a week. The jury never heard for a minimum of 20 hours a week. Never heard that. Not even once. Because none of the union witnesses could remember. And the judge would not allow these excluded documents to even be used for fresh witnesses' recollection. And the questioning broke down quickly when, I believe it was Heather Shader, would ask about the terms. And the people would say, I don't remember the terms of that contract. So they were not able to put it in. Even under the government's theory, there was all but $17,000 of this was legitimate. But the jury never heard that. And this matters. And this actually, again, gets it down closer. And I point out that the government, when it talks harmless error, it really says and counts one through six mail fraud. Even if this principle applies for later, it's hard to get to mail fraud. Well, we think it does infect the whole amount. But if mail fraud, the entire loss amount on that was $102,000. Which would be four points less. Two years less in prison. So let's remember that this is a case where counting loss mattered. So yeah. If we could go back a moment. This Account 8. Are there special facts to account for the acquittal? I take it the acquittal on the payments for December 6 and December 28, 2007. It's not really acquittal, because you don't have to pay each one transaction. You know, I would say that. Maybe it's not acquittal. It actually was treated as an acquittal there. But I don't know the precise reason why that happened. There was a six-month jump between December 2007 and May 2008. But what I would further say, just very quickly in closing, if you don't have further questions. I do have one more. This argument that you were just talking about here about the $45. That was presented as a motion for judgment of acquittal in the district court. And the district judge upheld the jury's verdict on the theory that once she was switched from the $45 an hour to the $70,200 an hour. And all the claims in that count came from time after the switch. That that was what was unauthorized. Your Honor, let me tell you. I'm right about describing at least. What the judge held was that there was a question of fact that the jury properly resolved against Mr. Gray Burris whether it saved money for the union to switch Gabby Burris to a flat cell. There was a question of fact that his 40 hours a week would be more than her salary. And what the jury never heard. What Judge Roberts did fully admit was that it was a close question on count 12 at trial. That is one that could have gone either way. So it's a lot harder to deem something harmless. The jury never saw the portion of that agreement that said that she's entitled to at least 20 hours a week. So in finding that he did not save the union money to switch Gabby Frazier, the jury never found out what her minimum payment was. Could you, when you come back on rebuttal, could you just point me to, I didn't catch this part of your argument in the brief. I'm not saying it's not there. Okay, I can find that. The part about the 20, about the hours, the number of hours. About the hours. I will. Do you want me to do it right here? You can do it when you come back. It seems to me your argument has been largely along the lines of Rule 16. And I'm not hearing you address the Rule 17 issues. And as I recall your brief, your argument was that the only sanction for failure to comply with a subpoena is the contempt sanction. Yes. If we were to disagree with that and think that there's more a judge can do under Rule 17 than impose contempt, that would cause you problems, wouldn't it? I mean, how can you convince me that the only remedy for a Rule 17 violation is contempt? Well, Your Honor, what I can say is that, first of all, the government on appeal does not try to justify a Rule 17. They instead resort to inherent authority. Well, but can't there be inherent authority for violation of, for failure to comply with a subpoena? So what happened was, was that the contempt statute used to say that there can be a fine or imprisonment for contempt. And courts had held that that was the outer limit of contempt. And so that you can only do fine or imprisonment. And then it was changed to be fine and work. Contempt is a particular remedy for, or sanction that can be opposed for failure to comply with a subpoena. But it's not the only one, is it? I mean, contempt has to do with punishing a person. The issue seems to me here in front of the district court, wasn't so much punishment, it's just a simple fairness of case management, right? He wasn't interested in punishing Mr. Gray Burris. He was interested in, in there being a fair trial and, and, you know, holding back for a period of time, whether intentional or not, and then trying to get something admitted at trial. Why isn't that right within the wheelhouse of inherent case management authority that the, that the district court judge had? Because this court has said in U.S. versus Hall that the inherent authority to go beyond the punishments specified in the rules aren't for near misses of the rules, that you can't use it to add on. The near miss here is that there is no bad faith. There is no bad faith. And in fact, but it's also that it thwarted the truth. The jury had a right to see these documents. The, the government in closing. What would a sanction short of excluding have been? A sanction. The statement doesn't seem relevant because as you say, we can't. Yeah, it could have been a fine. I mean, it could have said, you know, this is, this is something that matters. The court could have on its own imposed on the misdemeanor portion of that could have imposed jail time without sending that to the jury. Could it have included a statement by the judge that this document was not turned over to the grand jury? So, um, and that the, that the jury can make any inference at once from that. The judge did say that. Yes. The judge did say, I think, wait, I don't know. I'm asking whether that would have been a lesser sanction. That would have been a lesser sanction. Yes. Juries get instructed in the civil context all the time happens all the time that parties interfere. And that would have really hurt their case. The judge could have provided that as a sanction, but the important thing here is that these were in this, these were genuine documents. The government can make whatever arguments it wants about them in front of the jury. When, uh, when the district court was finding that there was no bad faith, wasn't he referring to the council's conduct and do we have any finding about, uh, gray Burris's? Well, he found that after council said, this is my fault. I'm the one who went through these documents. I had seen this document and when I'd seen the government's version, I didn't realize that the government's version was unsigned. Does that absolve gray Burris? Yes, it, it, it does. Subpoena ran to him, right? The subpoena ran to him, but he, um, it's council who goes through with him in the room saying, this is, I have two bags full of documents. This is a huge document volume case. This is a mistake that any lawyer can make. I mean, really, I mean, there were a lot of lawyers that not any lawyer can make. This was one of those, which is that not realizing that what had been produced to you was unsigned. They had no idea until trial that the government intended to present a case that said this version we've produced here is unsigned. They didn't know that. Well, didn't the government submitted its trial exhibits? It submitted its trial exhibits and its exhibit was unsigned. Yeah. And, and what she didn't look, she didn't look at them. She didn't look at the trial. She did. So this bleeds into the argument that the next, it bleeds in. And on that front, I would just like to say two things very quickly, which is that what there are two public policy reasons to find that, that she did not look at the two lawyers say that they did not ever look at the government's exhibits. Um, I'm Heather, Heather Shaner spent the entire time. Well, the time leading up to trial. Is that a yes or no? Yeah. I don't know if she said that exactly. What I do know is that she said that Pat Christmas told her that everything was handled and that she then, uh, when this order came out, she was busy getting her own lawyers from Jones day. So, so, um, we don't know that Christmas didn't look at the exhibit, right? Um, if you can infer from this record that Christmas did any trial preparation, I would say that that is a leap, uh, your honor, the, um, and what I would say. So you want us to send it back to bleeding over to the next argument, um, for the following question from the district judge, did you prepare for the trial at all? And you, I assume you expect him to say no, in which case he'll lose his bar license, right? So is this really a realistic, uh, you really expect? He's going to say, no, I didn't prepare your honor. I don't know if he's going to say that. What I do know is that if they didn't look at the government's trial exhibits, that's on the government. That's not on the client. If, if the trial council did not review the government's exhibits, effective assistance, at least on the first, yeah, no question about it. But you expect them to say that I take it. You know, your honor, if we go through the hearing, um, on the show cause order at the end of trial, they come and they admit to gross negligence over and over. And we're, we're, we're, we're, we're well away from student council's opportunity to make an argument here. Let's let's let student council talk. All right. Thank you. Let's do either of you have chief justice, your honors. May it please the court. You just gave us a big promotion here. Go ahead. My name is Alex and I'm here representing Mr. Gray Burris on the ineffective assistance of counsel claim. We'd like to ask this court to either reverse the judgment below and grant Mr. Gray Burris a new trial or in the alternative to remain for further fact finding consistent with this court's opinion in the United States. The honors, we asked these remedies for three main reasons. First, under the Supreme court's coiler standard counselors below Shaner and Christmas had a conflict of interest that adversely impacted the representation of Mr. Gray Burris. But before you go on to a three, could you elaborate on that? It seems to me they they're under the gun for not being active and intelligent and so forth in their representation of the defendant. And they know that there's going to be a proceeding afterwards in which their activity and intelligence exercised on behalf of the defendant will be the issue.  Of course, your honor. So the two ways of that trial could order that extraordinary trial could order really split the incentives of trial counsel are first, that it may have prevented them from being as aggressive in their representation. Why? That's what I'm getting at. Yes, it may have presented may have ended up being as aggressive in the representation from Mr. Gray Burris. If they were worried about maybe offending the trial judge or offending the court in some way by challenging. What the judge is clearly concerned about is that the defendant get adequate counsel. And I mean, obviously, the judge is likely that counsel would wound him and things like that. But there's no reason to think that aggressive, intelligent defense work will offend this judge. It seems to be extraordinarily insulting to the judge to suggest that he would view aggressive, intelligent defense as offensive. Respectfully, your honor, it's not insulting to the judge. What's really going on here is that this court before has used a subjective standard in determining conflicts of interest. And they've used that standard in the United States. But doesn't it actually cut just the opposite way? As an attorney, if you're under that sort of damage, you can do a better job, not a worse job, right? You can be a better advocate for your client, knowing that the court is watching you carefully and thus far is displeased. Yes, judge. So it is certainly conceivable to imagine counsel who would have taken this extraordinary trial court order in stride. What's important here under the subjective standard of the United States, if you heard, is that these trial counsel didn't. The expected and completely expected consequence of this trial court order is that Shainer and Christmas were terrified. We know this from several pieces of the record. For instance, Shainer- Perhaps. But does that mean there's an inherent conflict of interest from this order? I don't think so. Well, so this- And there may be other grounds to show that they were ineffective. But the mere fact that there was this order to show cause out there created an inherent conflict, that doesn't seem to me to be a very strong argument. So, but you have other arguments. Of course, Your Honor. So what's important to note, first of all, is that the show cause order wasn't just a show cause order. Whereas most show cause orders would stop at issuing perhaps a threat of sanctions or contempt, this one not only had sanctions, it had referral to the D.C. District Court Grievance Committee. It had letters to the D.C. Bar seeking other actions. And as if all that wasn't enough, it also threatened other unspecified actions. In short, Your Honors, what was really going on here is that, at best, Shainer and Christmas's entire professional reputations were at stake. At worst- But the question is, what is the way for them to protect against this threat? Yeah, they're doing a good job. So one easy way to protect against this threat, Your Honor, would have been to have held the court trial, as Shainer- No, no, no. Look, we're looking at Shainer and Christmas, their motivation, what could possibly be going through their mind. You know the judge has exercised about what appears to be incompetence so far. How do you fight the looming threat of being found incompetent? Surely not by being less competent than you can be. Right? I just, I don't see any way around that. Of course, Your Honor. As I said before, it is conceivable to imagine counsel would have taken that route. What's important here is that we have a subjective standard in the United States to be heard, and these counsel did not- Well, doesn't that show, isn't that a Strickland argument? It is. Right. The counsel are not being threatened with sanctions for being too aggressive. They're being threatened with sanctions for being too passive. So, they don't have an interest in showing passivity. If anything, they have an interest in showing aggressiveness. Now, you're saying that they didn't. They were, in a way, irrationally afraid, or at least one of them was. Well, that sounds like a Strickland problem, not like a Kyler problem. Of course. Right? Well, Your Honor, first of all, United States, you heard, was a Strickland case, but only because it preceded Corley v. Sullivan by a few years. It was dealing with a conflict of interest. I'm relying more on United States v. Shark than I am on that case. But I'm really relying on the rationale, not on facts of any particular case. There has to be a conflict of interest that creates disincentives for the counsel to go forward with zealous representation, correct? Yes. And in this case, I think Judge Williams is saying, that's not a conflict problem here. There's nothing about what the judge is complaining about that suggests that they've been too zealous. It's that they haven't been zealous enough. They haven't produced the documents they're supposed to produce at the right time. Of course. Well, Your Honor, in United States v. Shark, this court left open the possibility that there could be rebuke from a trial court strong enough to create a conflict of interest. This court specifically left open that possibility. And in so leaving that open, it said that any such rebuke would also satisfy the second problem, the adverse impact on representation. This is precisely that kind of trial court order, Your Honors. The professional reputations and maybe even the licenses of these counsel were at stake. Really, what happened and what we can see from the record is that these attorneys were more concerned with preparing for their own hearing and more concerned with not being too aggressive in front of the judge and the subjective understanding, the subjective fear that they had. I think I'm looking now at the point you just made about Shark, and actually it seems to me the court is making the point that I just made. Of course, if judicial's expressions of dissatisfaction were severe enough to lead defense counsel to make decisions that are both objectively deficient and prejudicial, the Strickland requirements for showing ineffective assistance would be satisfied. But a defendant cannot avoid those requirements by seeking out to make out a claim under the more lenient Kyler standard. I see my time has expired, Your Honor. That's okay. Of course. Of course. Well, Your Honor, it would have been much easier for the court to simply say that no rebuke from a trial court is legally sufficient to create a conflict of interest. But this court didn't say that. If there's any time left, Your Honors, I'd love to move on to the Strickland claim and help Your Honors answer some questions about that, but my time has expired. Why don't you talk about the counsel and the expert? Of course, Your Honor. Counsel failed to bring in an expert accounting witness to challenge or even verify the hundreds of pages of government accounting expert witness documents that they had produced. This is especially relevant in light of a recent Supreme Court decision, Hinton v. Alabama, where the Supreme Court decided that it was a deficient performance of counsel to not bring in an expert witness to challenge the government's expert witness when it was fundamentally important to that case. What's important here, Your Honors, is not necessarily that the defendant's expert witness would bring something new to the table, but that it could check the government's witness. That it could make sure that the government's expert witness was not giving hundreds of pages of basically uncontroverted evidence to the jury on an important case where the themes of the government and the defense were so contrary. I understand where that takes you on the first part of Strickland. What about the second part? Of course, Your Honor. On the second prong of Strickland, in this court decided in the United States v. Poll that a defense not bringing in a few unredacted memos was enough to have created a reasonable probability of prejudice and remand that case. Here, Your Honors, not only do we have a direct analogy to those unredacted memos with the 2009 employment agreement that was not brought in, we also have the fact that counsel failed to raise an assistance of counsel argument, which was an obvious, clear, and fairly exculpatory defense available to them, as well as failing to bring in a multitude of defense exhibits and also the expert accounting witness. Well, if Your Honors have no further questions, my time has expired. So we ask that this court either reverse or remand in favor of Mr. Gray-Burris. Thank you very much. May it please the Court, good morning, Your Honors. Vincent Falvo for the United States. Your Honors, representing the defendant at trial would present near-insurmountable obstacles for even the most dedicated and talented counsel. Defendant was charged with stealing money out of simple checking accounts, using the checks, and the primary evidence of his offenses were those checking account records and bank records. This conduct went on for eight years without interruption, during which the defendant was counseled by the Labor Department, was sued by the Labor Department, all but eliminating the possibility that defense counsel could have brought an accident or mistake. Can we talk about the 2009 contract? Yes. I'm concerned about why the district court would not allow it to be used for any purpose. And the same for the other contract, the 2011 one. Well, the judge did permit for witnesses to be questioned about the contract. Yes, but not to be shown it or refresh their recollection or anything like that, right? Well, Mr. Gray- That's right, isn't it? The judge said you can't use it for any purpose. He made that finding in the ninth day of trial after counsel admittedly said he was trying to weasel around. Well, he may have been trying to weasel around, and that may go to the Strickland argument about whether he was competent or not. But Rule 16 says nothing, zero, about the use of documents in impeachment or refreshing recollection. It only has to do with use in case in chief, correct? It says any sanction that the court finds is appropriate. For violation of Rule 16? Yes. But it doesn't violate Rule 16 to use a document that you haven't produced for impeachment or refreshing recollection, right? Your Honor, my understanding of Rule 16 is it is within the judge's power, and it would- Where does that understanding of Rule 16 come from? The rule itself, as defense counsel said in the argument, refers to the use of documents for the case in chief. Where does it say that the defendant has to produce a document to the defense? All the citations have been to Rule 16b1, information subject to disclosure, correct? Correct. That's a reciprocal obligation. It says if a defendant requests disclosure under Rule 16a1e, which they did here, and the government complies, then the defendant must produce dash, dash, dash if the defendant intends to use the item in the defendant's case in chief at trial. That is correct. So if the defendant intends to use it for impeachment or for refreshment of recollection, they do not violate Rule 16 by using it for that purpose. They had already indicated that they sought to use it in their defendant's case in chief, and I think we just heard an argument based upon- Please, just ask. I just want to focus on this one thing that's bothering me. Okay. Okay. And the one thing that's bothering me about this is they tried to use it. They never put on a case in chief. They tried to use it to impeach, to refresh recollection, to get helpful responses from, I think, Gibbs and I can't remember the names of the others, Tyree and Trevino or something like that, right? Yes. They tried to use it for that purpose. What in Rule 16 bars them from using it for that purpose? Well, I believe the Rule 16 requires the disclosure of the documents long before it actually makes its appearance as an impeaching document. Really? And what in Rule 16 says that? When the obligation attaches- But it says it's the obligate. I'm saying this because I tried a lot of cases, both as a prosecutor and defense counsel. I've never heard anybody make the argument that you can't use it for impeachment. And there is nothing in Rule 16 that says that. Well, I think the judge in his ruling did rely on Rule 17. So now we're only on Rule 17. Well, I don't think it's just merely only on Rule 17 that the judge is presented with the problem of how to handle this particular document, which has been withheld from the grand jury and was not sent over in discovery. That's not a Rule 16 problem. Well, it is a Rule 16 problem to the extent that the defense counsel has ignored the judge's prior rulings on Rule 16, from the pretrial motion where this came up first time, from the first day of trial- But the district judge ordered that Rule 16, the reciprocal discovery obligations, be honored, correct? Yes. I'm going to ask you again. Can you cite any case or any language in Rule 16 which makes a reciprocal obligation on the defense to produce to the government in advance of trial impeachment or refreshment documents? No. However, in this instance, it is the same document that should have gone over. Under Rule 17. And under Rule 16, the document itself should have gone over. The defense counsel indicated that they intended to use this as a defense in their case-in-chief. And they made repeated requests to the government, or excuse me, to the bench, that they be permitted to proceed in this fashion. In fact, the colloquy that appellate counsel likes to rely upon at 1080 is essentially Judge Roberts saying, what can I do here? You think there's a violation. I think there's a violation. There's no justification. I'm really asking you what I should do. Yes, it's a sanction, right? The sanction provision, the 16D, is very open, right? That is correct. You're relying on that. And this is just an additional hurdle for you, because I assume that everyone would agree that barring use for impeachment, and actually, it isn't impeachment. It's refreshment of recollection that I saw. Yes. Mainly for refreshment of going that far makes the sanction more extreme than simply barring its affirmative use as a document. Your Honor, respectfully, or it prevents defense counsel from doing exactly what he was trying to do, to get the witness to read the agreement into the record, thereby circumventing the judge's earlier... Indeed, indeed. So you go back to the justification of that, the justification of the judge's exclusion of the document. A discovery violation. It is very clear that that was the origin of his ruling. What were the reasons he gave? Is it clear why he was excluding the 2009 agreement and the Fraser agreement? What did he say was his basis for that? Was it Rule 17 or Rule 16 or both? I agree with Your Honor. The final ruling from the judge, the one that's under appeal, sounds more in Rule 17, that it would make a mockery of the adversarial system. Why aren't you arguing Rule 17 more? Why are you in the thickets of Rule 16? Your Honor, just responding to the arguments raised by the defense who has the burden here, I think the Rule 17 implications are very clear, and the judge's order is very clear about that. It would make a mockery. It is clearly inappropriate. It is clearly unfair. It is clearly prejudicial. What do you mean unfair? Unfair in what sense? You didn't make a prejudice argument, right? Your Honor, I disagree with that. What was the government's prejudice? Government's prejudice is they did not know of the existence of this document until it was presented to a witness and not even presented to the government's witness. What was the government's prejudice? Government's prejudice in terms of preparing its own witnesses, in terms of writing the indictment in a manner that might have taken into account. So, in other words, you might have charged them with less. That's possible. Well, that seems like not your problem, their problem. I mean, you can't complain that, gee, if only we'd known, we wouldn't have included count eight. The intention of defense counsel at trial was clear. What they sought to do originally with the fact witness, not an expert witness, as a student counsel has said, it was a fact witness. It was the agent, labor agent, testifying. What Mr. Prisma sought to do was say, look, you've gone all through all these records. Have a look at this. Did you ever see this before and present it as a surprise document, thereby undermining a witness who had never seen it? This is, again, you want to say they wanted to present it to a witness on cross-examination, right? That is correct. Yeah. All right. Let me ask you this. I don't see any argument that you've made that this document wasn't authentic, correct? Your Honor, quite frankly, there was no opportunity for counsel. Well, you haven't made it anywhere, even up till today, that it's not authentic. Whether it's authentic or not is not central to our argument. Not central. So imagine the following hypothetical. There's a rape. The, for some reason, the defense gets the rape kit and finds that, in fact, it is impossible that the defendant was the rapist. Totally impossible. But they decide that, for whatever reason, that they would like to cross-examine, use this on cross-examination and not present it. And they violate, I don't know, some instruction from the judge to produce all evidence in this. The judge is free to leave that out, to exclude that evidence. Is that your position? Again, if that isn't the only facts that I'm going with, that seems like a situation where the judge would be well-advised to give a condemnation. Would be abusing its discretion because it would end up with a person going to jail when the parties know that the person is innocent, right? That, we can't take the sanction that far, can we? No, Your Honor. Okay. Because you have an argument there of real prejudice to the defendant and an innocent party, according to your hypothetical. Correct. All right. So now that's the question we have, which is, how close to exculpatory is this document? I don't believe it's exculpatory to the whole count of county as the court waited. Or what about to the parts of county? I think, in some measures, it is inculpatory on county to the parts that were not charged under the time period of this agreement because it indicates that the defendant is aware that he has to get an employment agreement to justify an increase in his salary, which he had done prior to July 2008. So it's inculpatory as to the earlier ones, but exculpatory as to the later parts? Potentially, yes. Right. So, and that could affect a sentence. But you can imagine, you'd say, that being spun the other way, right? That the relationship between him and the board was such that paper did not really greatly interest them. And so there is no inculpatory inference from their defense. Your Honor, it's not just a question of paper. In this instance, there was also testimony. There was testimony that he had a legitimate or at least an existing agreement dated July 2007. He went to the president and another member of the board and said, I would like another increase in my salary. Here is what I would like. They said, we do not want to give you an increase unless we see the bank records, so we know the financial condition of the organization. That testimony indicates very clearly an affirmative decision of the board, at least two board members, that they did not want to go forward with a pay increase without seeing the records of the organization. That's why I think just simply presenting a July 2009 agreement with signatures not from members of the board is actually a circumvention of what he was authorized to do. Well, that's sort of a jury argument. A jury could certainly conclude, given that the Frazier contract, which in closing argument you said was a $45 per hour contract, perfectly legitimate, with the same signatures, virtually, the jury certainly could conclude that this was authorized, couldn't it? I mean, you have an argument that some other signatures had to be on it, but they have an argument that these signatures are good enough. That's incorrect. They may be the same signatures, Your Honor, but those people following their election in September of 2011, those people were now, excuse me, 2012, those people were now board members after that election. Although they're the same parties, they have different offices at that point. Plus, there was testimony that they were aware that she was going to be paid $45 an hour. It would place in writing her existing arrangement of earning $45 an hour for all the hours that she did work. Two days after receiving that authorization, Mr. Trey Burris got the President to sign a blank direct deposit form and instructed the Paychex Corporation to pay her a salary of $70,000 a year. Counsel has mentioned the idea that, well, that's going to save the union money. I did some just quick calculations. If she was earning $25 an hour for 20 hours a week, that's roughly $900 per week. It rounds out at about $43,000, $50,000. Even accepting that argument, there is a significant unauthorized element to this, and that is a material term of employment which involves the expenditure of union money. If it is not authorized, you can't just say, well, it should be reduced by what it would have been authorized if they had followed the right agreement. In terms of sentencing, Your Honor, we can go back. In the counts having to do with 501C, there was a total of $115,000. The next lowest rung is $70,000, $45,000 lower. That's not the question. That's all relevant conduct, so it's all added together for the final. They're all grouped. The counts are grouped. Well, that is correct. So it's $252,000. I saw the pre-sentence report. The entirety of count 8 is $38,000, Your Honor. Right, but all the money gets added together for purposes of sentencing. So the question is whether they can get below $52,000. Right, and the entirety of count 8 is $38,000. Right, and he conceded the count 8 alone isn't enough. He conceded when I asked him that count 8 wasn't enough. He's got to get some of the Frazier money down as well. And your argument is that even though they had a valid agreement for $45, none of that, $45 an hour, none of that, none of her pay can be counted as okay? Well, if she actually, $45 an hour for hours actually worked. Yes. And that is a long distance from $70,000 a year salary and no one even monitoring what kind of hours she worked. She received that payment directly from paychecks regardless of- There was no testimony at all about how many hours she worked? None. I mean, certainly in the September to October period, there was testimony from union members that yes, she ran this clinic for us. She was acting as our EEO person. She did some work and there is evidence that she did some work. But this was a real switcheroo, which is addressed in the trial court's published decision on- If the other- I didn't understand your brief to contest the application of Marshall. No, Your Honor. The only point I would make with that, it is the least severe sanction to gain compliance, to gain compliance. And in this instance, the judge had warned counsel in April, asked them each time, when is discovery coming? And they said, Your Honor, we have no discovery. Not it's forthcoming. We have no discovery right up and through trial. The first day of trial, a document that was not sent over in discovery made its appearance. And Judge Roberts day after day said, I'm going to hold off on making a final ruling until the parties can discuss defendant's trial exhibits list, which never was introduced, Your Honor. So we get all the way to day nine of the trial. The government is set to respond. And the defendant is sort of holding out that, well, we can send this over. I don't know when exactly. It's extremely radical position in view of Rule 16, that a defendant or any party can simply just sit on documents that were in existence for a couple of years and turn them over when they feel like, because they're in service of the truth. But of course, at the time the sanction is imposed, there already is compliance. So it's not the least restrictive method of ensuring compliance at that point, because you already have the documents. I don't believe compliance was affected at that point. In fact, the finding of the judge and the admission of Ms. Shaner during the colloquy was, I'm sorry, Your Honor, there is a violation here. There is a violation of Rule 16. And the judge said, well, what should I do about this? And on that date where everyone acknowledges there was a Rule 16 violation. I'm sorry, I hate to go back about this. My recollection of that back and forth is, there's a violation of Rule 16 with respect to their exhibit list. So that it couldn't be used in a case in chief. Not with respect to the question of whether it could be used for any other purpose. In fact, Shaner makes exactly this argument that Rule 16 doesn't apply to impeachment or refreshment. Well, again, Your Honor, the more important, rather than impeachment, which the judge found it would not be an impeaching document because the witness had not seen it. I think going down that path, your point is well made, if only on refreshment of recollection. The witnesses were allowed to testify as long as it was relevant about the contents of that document. And I think given the Rule 16 and 17 interplay, it was not an unduly severe sanction given the time period and the history of the case to say that this should not be used for terms of refreshment of recollection. When counsel said what he intended to do was have the witness read from the document. Just to be clear on the rule, suppose there's been a clear violation of Rule 16, but then the document that ought to have been delivered is delivered, so it's belated compliance. At that point, some marshal applause, in what sense is one trying to assure compliance? Is it compliance in terms of laying down a principle going forward for other lawyers, or what? I think it's compliance for that particular trial. Certainly, that's the only trial. I don't see how that makes any sense because at that point you have belated compliance, right? Well, Your Honor, I think also we have to take into account in, say, future, well, there can't be future Rule 16 issues, can there? There were plenty of surprises at trial, Your Honor. There were exhibits that kept coming in. The Frazier agreement did not appear until after the first agreement was excluded on November 20th, and the Frazier agreement came in and the judge said, well, what's this all about? Isn't this the same thing? To assure compliance of these counsel with respect to any parallel problem. That's correct, and I think the context may be very important that we were in the middle of the trial. If you look at some of the review of Rule 16 cases, they typically involve late discovery prior to trial, or just at the beginning of trial, not something in the middle of trial, nine, 10, 11 days afterwards, and this is not a defendant in a white-collar case who said, my gosh, I sent them three boxes of discovery.  into that box of discovery. This is a defendant who sent counsel zero discovery and represented all along that we have no discovery, we have no discovery, and counsel, I think, is free to rely, place some reliance on the fact that the defendant's case-in-chief would not involve documents that were not. Just one fact question. You said that they were trying to read from the document. I'm looking at JA 1265 on the Gibbs, on the Burris document, Gibbs testimony, questioning Gibbs, and you knew that Mr. Burris's salary was going to go up to $75,000, correct, in a meeting? Yes. And you signed that, correct? No response. Would it refresh your memory if I showed you a document? Yes. Would it refresh your memory? Yes. May I, Mr. Christmas, may I have it marked, Your Honor, for purposes of refreshment? I would like her to see this to refresh her recollection, not for introduction, to refresh her memory that she signed the document. And it was at that point that there was an objection from the government and that the district court said it can't be used for any purpose. Am I right? Your Honor, your point is well taken with respect to the refreshed recollection and the use of this document. Okay. Now, without, if there aren't any other questions, briefly on the Strickland issue. Yes. So what about the defense of counsel? Advice of counsel defense, sorry. Again, they fault the trial counsel for failing to call Mr. Goodman. We don't know if he was available. We do know by defense counsel's admission that he had been disbarred for stealing client funds, that he was only in contact with Mr. Burris during the period of the pension fraud. Counts one through six. Other witnesses, including Mr. Levinson, who was also an attorney and trying to present the same- Didn't defense counsel display some surprise or lack of familiarity with the rule about the unavailability as well? Pardon? Didn't she display some lack of knowledge about the role of unavailability in a hearsay? I don't recall that as a record, your Honor. There was no real, there was an attempt, I believe, to present Mr. Levinson, who was not the attorney for the union at that time, to have him sort of bootstrap a lot of these arguments that, well, yes, of course. Right, and he tried to testify that Goodman said it was okay to go forward and the government objected hearsay and Shaner said admission against interest and the judge said that only counts if you can show Goodman is unavailable and she said, I didn't know that. That sounds like somebody didn't know their evidence rules. That's the question Judge Griffith is asking. What, that there was no inquiry into whether Mr. Goodman was available? Right. Why, Ms. Shaner, is that- She didn't know that. She didn't even know that was a rule. She didn't know that you couldn't get it in unless he was unavailable. You're looking surprised as we're surprised. I have no recollection of that particular instance, but again- That is surprising, right, that an experienced counsel would say that. I have to look that up. I have my evidence book in the other room, Your Honor. The court says, well, I am looking it up and it says it only applies when a witness is unavailable and she says, well, I was referring to a statement against interest. I don't remember researching whether it required availability or not. That seems like it gets over the first, at least arguably over the first strictly. I was about to make the same point. It is arguably over the first poem, but again, Your Honor, the ultimate issue is whether Mr. Goodman would have assisted in any way counsel's case. That's the sort of thing the district court ought to be looking at, right? That's the sort of thing the district court ought to be looking at. We don't have the record to make that determination. Whether Mr. Goodman was unavailable. Right, right, right. Whether he was unavailable or if he was available, was there a good strategy not to call him or was it- The defendant had at his disposal the ability to get Mr. Goodman's advice to counsel. He had other people attempt to say, this is completely- I'm not following. Why don't they get at least a remand on this question? I think we've pretty well established already that there's at least arguably a failure to understand the evidence rules. And then the counsel represents to the court that Bruce Goodman was being questioned in the presence of David Levinson and I believe Caleb Burris and on the question of what could have been done to resolve the issue of monies taken from the pension fund at Harbor Bank and used for operating expenses. And Bruce Goodman said, I told him he should do that and that was just fine. And it says the government knows this because they sent an investigator to interview Bruce Goodman. Plus they have affidavits in the civil suit. And Bruce Goodman said, yeah, I told him he could do that. And it was, hey, turns out I was completely wrong. I'm not an expert on ERISA law. I shouldn't have told him that. With due respect, I think government counsel would have had done quite a productive cross-examination of Mr. Goodman, he being disbarred for stealing client funds. Each of the government's witnesses with respect to counts one through six were questioned by Mr. Christmas. Isn't this a legal way to proceed? Couldn't someone take this money out of the 401k accounts? And he received the answers that no, you could not do that, including Mr. Levinson. Right, but our standard on direct is not whether they've established the strickland violation. It's just whether they've made a colorable one, correct? Yes, and I don't believe there's a colorable one here. And again, the second prong carries the day if one believes Mr. Goodman's presence would have been. But the expert witness, potential expert witness, it wasn't produced? Your Honor, again, I want to make the point that the government did not produce an expert. It produced the Department of Labor. So there's no, this idea that they have to play tit for tat on this. These records were checks and bank statements. The presence of a forensic accountant who would be subject to cross-examination would be subject to cross-examination about where are the receipts that support these expenditures? Where are the authorizations of the board that support these expenditures? Don't you find that that's often how organizations properly expend money? He would be subject to all of that cross-examination. And part of the evidence, part of what he would have to say, other than yes, that's all true, is Mr. Burris had the records. I don't know where they are right now. There's a count 15 in the indictment, or 16, I'm sorry, which accuses Mr. Gray Burris of destroying receipts and records. So number one, they weren't available to either the government or any potential expert of the defense. But any expert would have to say, well, they're not here because they don't exist or they weren't turned over, which would be extremely inculpatory on that count. So counsel is sort of faced with, at best, a very difficult choice to say, well, I should put a forensic accountant on to review some bank statements and checks and subject that person to cross-examination. Further questions? Okay, thank you. Thank you so much. I assume nobody has any time left after all that. All right. I do have a matter where you want me to cross-examine. I found it. Oh, you found it? Yeah, but we'll give, I don't know, we'll give you each one minute. How about that? Each of the two defense counsels. The prejudice is the jury found false facts. I mean, count 12, for instance, the jury found a theory that she wasn't entitled to be compensated at all for this period. And the government said, well, maybe there was some evidence about whether she did work. All of the testimony is that the reason the union started following its constitution in 2011 is because of Gabby Frazier. She was doing a heck of a lot of work. She ran the election. She kept on going. She was the one who ensured the corporate compliance that had never taken place because in the government's theory, our client was never entitled to be compensated for anything until 2011 because they had never followed their guidelines for approving his salary. And how far did this prejudice go? It's hard to say, but there's a public policy of avoiding constitutional questions. And Heather Shaner is CJA counsel. And some of these, like the hearsay rule were egregious. Some of them, like thinking that another lawyer is going to handle something is there but for the grace of God go I kind of misconduct. And so I think that this court can, particularly in the government's closing argument, infer that there is non-harmless error in a whole new trial, which would fortunately move that constitutional question. All right. And does Mr. Krishnik have anything more? You can have another minute. You can have a minute as well. Your honor, there's just two brief points on why there's at least a colorable claim here for remand. Not knowing whether Mr. Goodman was available or not for subpoena is enough for remand. And as Judge Griffith noted, counsel woman Shaner failed to even read the basic rule of evidence that she was relying on, that critical defense. Let's assume that is adequate for a remand on the first part, first prong of Strickland. What about second? Again, your honor, as I noted in the primary argument, this court's decision in United States v. Pol found a colorable claim under even the second prong when there were unredacted memos that were failed to be introduced. We have that here, both for the 2009 employment agreement, as well as with this advice of counsel. Because of that, your honors, we ask for this court to either reverse or remand. Thank you. All right. We'll take the matter under submission. Mr. Klepper and Mr. Krischick, you were both appointed by the court to represent the appellant in this case. The court thanks you very much for your assistance.